D/F

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X
ZAXCOM, INC.,

                             Plaintiff,

        -against-

LECTROSONICS, INC.,

                             Defendant.
-------------------------------------------------------------------X

**MEMORANDUM & ORDER**

**17-CV-3408 (NGG) (SJB)**

NICHOLAS G. GARAUFIS, United States District Judge.

      Plaintiff Zaxcom, Inc. brings this action against Defendant Lextrosonics, Inc. alleging patent infringement of three Zaxcom patents: U.S. Patent No. 7,929,902, U.S. Patent No. 8,385,814, and U.S. Patent No. 9,336,307 (collectively, the "Patents-In-Suit"). (Am. Compl. (Dkt. 33).)

      Before the court is Defendant's motion to dismiss the amended complaint for improper venue pursuant to Federal Rule of Civil Procedure 12(b)(3), or, in the alternative, to transfer the case to the United States District Court for the District of New Mexico pursuant to 28 U.S.C. § 1406(a) (the "Motion"). (Mot. to Dismiss ("Mot.") (Dkt. 41); Mem. in Supp. of Mot. ("Def. Mem.") (Dkt. 41-1).) For the following reasons, the court GRANTS Defendant's Motion and ORDERS the case transferred to the District of New Mexico.

## I.    BACKGROUND

### A.    Facts

      The court takes the following statement of facts largely from Plaintiff's amended complaint, the well-pleaded allegations of which the court generally accepts as true. See 5B Charles Alan Wright & Arthur R. Miller, Federal Practice & Procedure § 1352 (3d ed. 2018). A district court considering a Rule 12(b)(3) motion to dismiss for improper venue may also

examine facts outside the complaint to determine whether its venue is proper.  See id.; Uni-Sys.,

LLC v. U.S. Tennis Ass'n, No. 17-CV-147 (KAM), 2018 WL 4863589, at *3 (E.D.N.Y. Oct. 5,

2018) (observing that if the court chooses to rely on pleadings and affidavits instead of an

evidentiary hearing, the plaintiff need only make a prima facie showing of venue).  Specifically,

the court considers the Declarations of Gordon Moore, Howard Kaufman, and Jerry Cudmore in

support of Defendant's motion to dismiss (see Decl. of Gordon Moore ("Moore Decl.") (Dkt. 41-

2); Decl. of Howard Kaufman ("Kaufman Decl.") (Dkt. 41-3); Decl. of Jerry Cudmore

("Cudmore Decl.") (Dkt. 41-4); Suppl. Decl. of Gordon Moore ("Suppl. Moore Decl.") (Dkt.

44)), as well as the exhibits attached to Plaintiff's memorandum of law, which include

depositions of the same three individuals (see Pl. Mem. in Opp. ("Pl. Opp'n") (Dkt. 42)).

Plaintiff, the owner of the Patents-In-Suit, is a corporation organized and existing under

the laws of the state of New Jersey, with its principal place of business in Pompton Plains, New

Jersey.  (Am. Compl. ¶ 1, 78.)  Plaintiff is a "leading designer and manufacturer of professional

audio equipment for the television and film industries."  (Id. ¶ 73.)

Defendant is a corporation organized and existing in New Mexico, with its principal

place of business in Rio Rancho, New Mexico.  (Id. ¶ 2; Moore Decl. ¶ 3.)  Defendant is engaged

in the business of designing and manufacturing a variety of electronics devices, including

wireless microphone systems and related accessories.  (Am. Compl. ¶¶ 80-81; Moore Decl. ¶ 3.)

One of these wireless microphone systems is the Portable Digital Audio Recorder ("PDR").

(Am. Compl. ¶¶ 80-81; Moore Decl. ¶ 3.)  It is Defendant's production, sale, and distribution of

the PDR that led to this suit.

Plaintiff asserts that Defendant sells the PDR "through Amazon.com and its online

website" (Am. Compl. ¶ 4), but Defendant contends that it "does not sell its products, such as its

2

PDR, directly to the public." (Moore Decl. ¶ 5.)  Instead, Defendant's products are exclusively "sold and shipped from its New Mexico place of business to independent dealers," who "in turn offer to sell [Defendant's] products to their customers." (Id.)  The only exception to this rule is "certain 'commodity-type' goods, such as connector cables or antennae," which customers can order directly from Defendant's New Mexico factory. (Suppl. Moore Decl. ¶ 9.)

Defendant states that it has one employee, Howard Kaufman, who resides in the Eastern District of New York. (Moore Decl. ¶ 6.)  Defendant has employed Mr. Kaufman since 1996 as a "technical representative" for the company's Northeastern Territory, which includes Maryland, Virginia, New York, New Jersey, Pennsylvania, Connecticut, Rhode Island, Massachusetts, New Hampshire, Vermont, Maine, and the District of Columbia. (Id. ¶ 6.)  His primary job responsibilities include "educat[ing] [Defendant's] dealers and their customers about the functions and capabilities of [Defendant's] products, and how they can be incorporated in a customer's system." (Kaufman Decl. ¶ 7.)  Mr. Kaufman has "no authority to place orders" for Defendant's equipment and cannot "fulfill orders." (Id.)  Defendant provides Mr. Kaufman with "demonstration samples" that he uses for "demonstration purposes" when meeting with dealers or their customers. (Id. ¶ 8.)  He stores these units in his home, "typically" in his garage. (Id.)  "[O]ccasionally," he lends such samples "on a temporary basis to dealers or prospective customers who want to test and evaluate those products," or "provide[s] a demonstration unit to a customer who has an urgent need" and cannot wait for a dealer to order one from Defendant's headquarters. (Id.)  On "a very few occasions," he has been authorized to sell "a few pieces of [] used demonstration equipment that were no longer in production." (Id.)

When Mr. Kaufman was hired by Defendant in 1996, he lived in Valley Stream, New York. (Id. ¶ 4.)  Shortly thereafter, however, he moved to his current address in Seaford, New

York.  (Id.)  Mr. Kaufman works for Defendant from a "home office [he] maintain[s] in a small room at [his] home address" for an "average" of "roughly five hours a week."  (Id. ¶ 5.)  This work generally consists of "paperwork," including "the preparation of reports of [his] activities" and expense reports.  (Id.)  Mr. Kaufman also spends approximately one hour per day working at a local Starbucks, using his "laptop computer and cell phone to communicate with [Defendant's] dealers and their customers, or persons at [Defendant's] offices in New Mexico, for a variety of business matters."  (Id.)  The "majority" of his work—approximately 25 to 30 hours a week— involves traveling throughout the Northeastern territory to meet with Defendant's "dealers, their customers, and occasionally consultants who advise those customers."  (Id.)  Mr. Kaufman also rents a mailbox at a local UPS store, "for which [Defendant] pays," so that packages containing Defendant's products do not need to be left outside his house.  (Id.)  Mr. Kaufman has never met with dealers or their customers at his home in Seaford.  (Id. ¶ 9.)

Defendant "paid for [Mr. Kaufman's] purchase of a computer and printer," "provides" him with a cell phone, and reimburses him for the "cost of his automobile rental and insurance, and for cell phone and internet service charges."  (Moore Decl. ¶ 10.)  Defendant has also paid for "travel-related expenses, including meals," and other expenses incurred in "meeting with and entertaining dealers or their customers."  (Id.)  Defendant also provides Mr. Kaufman with health insurance benefits.  (Id.)  Defendant does not, however, pay or reimburse Mr. Kaufman for the use of his home to operate its business and Mr. Kaufman does not identify his home as Defendant's business location.  (Id. ¶ 9.)  Mr. Kaufman's business card bears Defendant's New Mexico address.  (Id. ¶ 10.)  Defendant does not identify Mr. Kaufman's home as its office on Defendant's website or in its publications or advertisements.  (Id. ¶ 9.)

4

Since 2008, Defendant has authorized Jaycee Communications & Electronics, Inc. ("Jaycee"), an "electronics repair business" located in Queens, New York, to provide warranty service and repair for Defendant's products. (Am. Compl. ¶¶ 42, 44; Moore Decl. ¶ 12; Cudmore Decl. ¶ 4.) Jaycee is run by Jerry Cudmore and his wife out of "an office annexed to [their] home." (Cudmore Decl. ¶ 2.) Jaycee has a non-exclusive contract with Defendant to serve as an authorized service center for certain of Defendant's products. (Id. ¶ 5.) The majority of Jaycee's current business is "with respect to [Defendant's] wireless products." (Id.; Am. Compl. ¶ 48.) When Jaycee performs work on a product still under the warranty provided by Defendant, Defendant provides Jaycee with replacement parts and compensates Jaycee for its labor according to established rates, which are periodically re-negotiated. (Cudmore Decl. ¶ 5.) For repair of products no longer under Defendant's warranty, Jaycee purchases parts from Defendant and charges the customers for those parts and for Mr. Cudmore's labor. (Id.)

### B.    Procedural History

Plaintiff commenced this action on June 6, 2017. (See Compl. (Dkt. 1).) On August 9, 2017, the court granted Plaintiff leave to conduct limited jurisdictional discovery. (Aug. 9, 2017, Min. Entry.) The court also granted Defendant leave to move to dismiss at some future point in time. (Id.) On November 16, 2017, Plaintiff filed the amended complaint. (See Am. Compl.) Defendant's motion to dismiss was fully briefed on March 6, 2018. (See Mot.; Pl. Opp'n; Def. Reply ("Reply") (Dkt. 43).)

## II.    LEGAL STANDARD

On a motion to dismiss for improper venue under Rule 12(b)(3), the plaintiff bears the burden of demonstrating that venue is proper. See In re ZTE (USA) Inc., 890 F.3d 1008, 1013 (Fed. Cir. 2018); CDx Diagnostic, Inc. v. U.S. Endoscopy Grp., Inc., No. 13-CV-5669 (NSR),

5

2018 WL 2388534, at *1 (S.D.N.Y. May 24, 2018).  In resolving such a motion, the court may

consider facts outside of the pleadings.  Peerless Network, Inc. v. Blitz Telecom Consulting,

LLC, No. 17-CV-1725 (JPO), 2018 WL 1478047, at *2 (S.D.N.Y. Mar. 26, 2018).  Unless the

court holds an evidentiary hearing, the court may rely on pleadings and affidavits, pursuant to

which "the plaintiff need only make a prima facie showing of [venue]."  Id. (quoting Gulf Ins.

Co. v. Glasbrenner, 417 F.3d 353, 355 (2d Cir. 2005) (alteration in original)).  In analyzing

whether the plaintiff has met its burden, the court "must view all facts in the light most favorable

to the plaintiff."  Uni-Sys., LLC, 2018 WL 4863589, at *3 (citation and quotation marks

omitted).

 Because this is a patent infringement action, venue is governed by 28 U.S.C. § 1400(b),

which provides that venue is proper either "in the judicial district where the defendant resides,"

or "where the defendant has committed acts of infringement and has a regular and established

place of business."  For purposes of § 1400(b), "'reside[nce]' . . . refers only to the State of

incorporation."  TC Heartland LLC v. Kraft Foods Grp. Brands LLC, 137 S. Ct. 1514, 1521

(2017) (alteration in original).  In In re Cray, Inc., 871 F.3d 1355 (Fed. Cir. 2017), the Federal

Circuit announced a three-part test for determining whether venue is proper under the "regular

and established place of business" prong: "(1) there must be a physical place in the district; (2) it

must be a regular and established place of business; and (3) it must be the place of the

defendant."  Id. at 1360.[1]

 In applying this analysis, courts should be "mindful that patent venue is narrower than

general venue—and intentionally so."  Peerless Network, 2018 WL 1478047, at *2.  "Congress

adopted the predecessor to § 1400(b) as a special venue statute in patent infringement actions to

---

[1] Whether venue is proper under § 1400(b) is an issue unique to patent law and is governed by Federal Circuit law.
See In re ZTE (USA) Inc., 890 F.3d at 1012; In re Cray, 871 F.3d at 1360.

eliminate the 'abuses engendered' by previous venue provisions allowing such suits to be brought in any district in which the defendant could be served." Schnell v. Peter Eckrich & Sons, Inc., 365 U.S. 260, 262 (1961) (quoting Stonite Prods. Co. v. Melvin Lloyd Co., 315 U.S. 561, 563 (1942)).  Indeed, the Supreme Court has cautioned that "[t]he requirement of venue is specific and unambiguous; it is not one of those vague principles which, in the interest of some overriding policy, is to be given a 'liberal' construction." In re Cray, 871 F.3d at 1361 (alteration in original) (quoting Schnell, 365 U.S. at 264).

## III.    DISCUSSION

Because Defendant is incorporated in the state of New Mexico (see Am. Compl ¶ 2; Moore Decl. ¶¶ 3, 4), there is no dispute that Plaintiff cannot make out a case for venue under the residency prong of § 1400(b).  See TC Heartland LLC, 137 S. Ct. at 1518.  Consequently, Plaintiff must show both that Defendant has committed acts of infringement in the Eastern District of New York and that it has a regular and established place of business here.  § 1400(b).

Defendant does not contest Plaintiff's allegations that Defendant committed acts of infringement in this district.  Whether Defendant has infringed the Patents-In-Suit is a factual question not appropriate for resolution on a motion to dismiss for improper venue.  See Medicines Co. v. Hospira, Inc., 881 F.3d 1347, 1350 (Fed. Cir. 2018) ("Infringement is a question of fact.").  The court will thus accept Plaintiff's allegations that Defendant "has sold products and committed infringing acts in this district by offering for sale and selling [the PDR and related accessories]" through distributors in the district, such as Gotham Sounds and Communications, Inc., and by using these products in demonstrations in the district.  (Am. Compl. ¶ 24, 87; Declaration of Glenn Sanders ("Sanders Decl.") (Dkt. 42-2) ¶¶ 3-5.)  See 35 U.S.C. § 271.  That conduct is sufficient to constitute an "act of infringement" under § 1400(b).

7

See In re Cordis Corp., 769 F.2d 733, 737 (Fed. Cir. 1985) (noting that the "issue of infringement" is "a question to be determined at trial" and "is not reached on the merits in considering venue requirements"); Funnelcap, Inc. v. Orion Indus., Inc., 392 F. Supp. 938, 943 (D. Del. 1975) ("[C]ourts have consistently held that an allegation of infringement is itself sufficient to establish venue and plaintiff is not required to demonstrate actual infringement . . . .").

The question before the court is thus whether Defendant has "a regular and established place of business" in the district. In determining whether Plaintiff has met its burden, the court applies the factors set forth in In re Cray: "(1) there must be a physical place in the district; (2) it must be a regular and established place of business; and (3) it must be the place of the defendant." 871 F.3d at 1360.

### A.    Physical Space in the District

At this stage in the litigation, the court concludes that Plaintiff has satisfied the first element of the In re Cray test. Mr. Kaufman's home office, which Plaintiff describes as "includ[ing] a dedicated room and storage area in a garage, within which are kept various equipment used by Mr. Kaufman to discharge his responsibilities" (Am. Compl. ¶ 26), is "a physical place in the district" insofar as it is "[a] building or a part of a building set apart for any purpose," In re Cray, 871 F.3d at 1362. The same is true for Jaycee, which "is situated at a physical location within the Eastern District (i.e., Oakland Gardens, NY)." (Pl. Opp'n at 18; see Am. Compl. ¶¶ 42-45.) Defendant does not contend otherwise.

### B.    Regular and Established

The court similarly finds that Plaintiff has met its burden to show that the place of business is "regular and established." In re Cray, 871 F.3d at 1362. A business may be "regular"

8

if it, for instance, "operates in a steady[,] uniform[,] orderly [, and] methodical manner." Id.
(alterations in original) (internal quotation marks and citation omitted). Mere "sporadic activity
cannot create venue." Id. To be "established" the "place in question must be 'settle[d] certainly,
or fix[ed] permanently.'" Id. at 1363 (quoting Establish, Blacks Law Dictionary (1st ed. 1891)).
In other words, "while a business can certainly move its location, it must for a meaningful time
period be stable, established." Id.

Under these definitions, both Mr. Kaufman's home office, which he maintained within
the district for approximately 20 years, and from which he has continuously conducted business
in service of Defendant, and Jaycee, which has operated as an authorized service center for
Defendant's products from the same location in Queens for over nine years, are "regular and
established" places of business. (Kaufman Decl. ¶ 5; Cudmore Decl. ¶¶ 2, 4; Deposition of Jerry
Cudmore ("Cudmore Dep.") (Dkt. 41-18) at 39:10-40:13.)

C.    **Place of the Defendant**

Finally, the court must determine whether Plaintiff has made out a prima facie showing
that the "physical," "regular and established place[s] of business" that Plaintiff has identified in
the district—Mr. Kaufman's home office and Jaycee's business location—are "place[s] of the
defendant" and "not solely [] place[s] of the defendant's employee" or independent contractor.
In re Cray, 871 F.3d at 1363. To aid in determining whether a defendant has "establish[ed] or
ratif[ied] the place of business," the Federal Circuit has identified several important
considerations, including (1) whether the defendant owns, leases, or otherwise exercises control
over the premises; (2) "whether the defendant conditioned employment on an employee's
continued residence in the district"; (3) whether the defendant stored inventory there to be sold
or distributed from that place; (4) whether the defendant made outward representations that the

physical location was its place of business; and (5) how the alleged place of business in the district compares to other places of business of the defendant in other venues.  Id. at 1363-64 (citations omitted).

### 1.    Mr. Kaufman's Home Office

First, Defendant does not appear to own, lease, or otherwise control any portion of Mr. Kaufman's home in the Eastern District of New York.  While Defendant does reimburse Mr. Kaufman for certain expenses, including computer supplies and the UPS mailbox that Mr. Kaufman uses to receive demonstration units, Defendant does not provide an allowance or reimburse Mr. Kaufman for any expenses related to the physical space of his home office, including rent.  (Deposition of Howard Kaufman ("Kaufman Dep.") (Dkt. 42-8) at 62:8-25, 153:4-13; Deposition of Gordon Moore ("Moore Dep.") (Dkt. 42-4) at 136:4-137:19.)  See BillingNetwork Patent, Inc. v. Modernizing Med., Inc., No. 17-CV-5636, 2017 WL 5146008, at *3 (N.D. Ill. Nov. 6, 2017) (concluding, where defendant did not own or lease employees' homes, require them to reside at particular locations or in the district, and did not publicly advertise or list the homes as a place where it conducts business, that the facts "merely show that there exists within the district a physical location where an employee of the defendant carries on certain work for his employer").

Second, Plaintiff has not demonstrated that Mr. Kaufman's employment is conditioned on his continued residence "in the district."  In re Cray, 871 F.3d at 1364.  Plaintiff avers that (1) New York is "one of the most important markets for [Defendant]" (Pl. Mem at 2); (2) New York City is "the most crucial area for sales within [Mr. Kaufman's] region" (id. at 20 (citing Moore Dep. at 156:9-157:19)); and (3) Defendant requires its regional representatives to be located "within their assigned territories and forbids them from moving to locations where they cannot

perform tasks or meet with customers in-person" (id. at 19 (citing Moore Dep. at 69:24-70:2, 155:21-156:8, 161:22-162:7)). These facts do not, however, indicate that Mr. Kaufman was required by Defendant to live in the Eastern District of New York or that he would have been prevented from moving to another judicial district in New York—by moving to, for example, Albany or Westchester—or to a different state in his territory. Indeed, Mr. Kaufman stated that although he has an "informal but clear understanding" with Defendant that he "must be able to travel to and service the needs of its dealers and their customers" in his territory, Defendant "has never made the location of [his] residence a condition of employment." (Kaufman Decl. ¶ 4.) Indeed, Mr. Kaufman moved his residence in the past—from Valley Stream, New York, to Seaford, New York—without seeking or obtaining consent from Defendant. (Id.) See In re Cray, 871 F.3d at 1363 ("[I]f an employee can move his or her home out of the district at his or her own instigation, without the approval of the defendant, that would cut against the employee's home being considered a place of business of the defendant.") Plaintiff agrees that Defendant "does not require offices to operate from specific addresses" and notes that Defendant's other regional representatives have been at various times located in different cities and even different states within their respective territories. (Pl. Opp'n at 6, 19; Moore Dep. at 67:10-68:25.) See In re Cray, 871 F.3d at 1364-65 (finding home offices were not places "of the defendant" because, in part, "[n]o evidence show[ed] that [the defendant] believed a location within the [district] to be important to the business performed, or that it had any intention to maintain some place of business in that district in the event [the employees] decided to terminate their residences as a place where they conducted business").

The third consideration—Defendant's inventory—may count slightly in favor of Plaintiff. Mr. Kaufman keeps a significant number of Defendant's products in his home and garage.

11

(Kaufman Decl. ¶ 8). Defendant contends that these items are "nonsaleable" "sales demo" products that Mr. Kaufman uses for demonstration or training purposes and that Mr. Kaufman is not regularly authorized to sell Defendant's products. (Id.; Moore Decl. ¶ 8, 10.) However, Mr. Kaufman also acknowledged that he sometimes uses these products to swap out defective units already sold to customers; has "occasionally," with Defendant's "tacit consent," "provide[d] a demonstration unit to a customer who has an urgent need for such product;" and "on a very few occasions," has been "authorized to sell a few pieces of [Defendant's] used demonstration equipment that were no longer in production." (Kaufman Decl. ¶ 8.) This contrasts with In re Cray, in which the court noted that the forum state-based employees did not store inventory in their homes. 871 F.3d at 1365. See also RegenLab USA LLC v. Estar Techs. Ltd., 335 F. Supp. 3d 526, 552 (S.D.N.Y. 2018) (facts regarding inventory storage at employees' home offices cut in favor of finding venue appropriate where employees used those products to conduct demonstrations for customers). But cf. Automated Packaging Sys., Inc. v. Free-Flow Packaging Int'l, Inc., No. 5:14-CV-2022, 2018 WL 400326, at *8 (N.D. Ohio Jan. 12, 2018) (finding venue improper where "small amounts of product are maintained in [employees'] homes, [but] this product is not available for direct sale to customers").

The fourth consideration is whether a defendant represents that it has a place of business in the district. In re Cray, 871 F.3d 1363-64. The court is instructed to consider whether the defendant lists the alleged place of business on a website, telephone, or other directory or if it affixes its name on a sign associated with the physical place in the district, while keeping in mind that "the mere fact that a defendant has advertised that it has a place of business or has even set up an office is not sufficient; the defendant must actually engage in business from that location." Id. Here, Defendant contends that it does not hold out Mr. Kaufman's home office as its place of

12

business. (Reply at 5-6; Moore Decl. ¶ 9.) There is no reference to his address on Defendant's website or in any of its advertisements or publications. (Moore Decl. ¶ 9.) The address displayed on Mr. Kaufman's business card is the New Mexico address of Defendant's headquarters. (Id.; Kaufman Decl. ¶ 10.) Mr. Kaufman's business cards do list his Long Island phone numbers (Kaufman Bus. Card (Dkt. 42-9); Kaufman Dep. at 125:12-126:7; see also Am. Compl. ¶36), but the use of these numbers in business "indicate at most that he conducted business from the [district], not that [Defendant] established a place of business there." 871 F.3d at 1365-66 (finding that an employee's use of a phone number with an Eastern District of Texas area code did not show that the employer conducted its business from that district). There is "no signage" in front of or on Mr. Kaufman's home identifying it as a place of business of Defendant, nor does he recall a dealer or customer ever coming to his house in connection with Defendant's business. (Kaufman Decl. ¶ 9.) Plaintiff points to Mr. Kaufman's statement in an online forum, in which he said "My office is in New York" (Kaufman Forum Post (Dkt. 42-10) at LEC000464; Kaufman Dep. at 144:10-146:10 (cited in Pl. Opp'n. at 10)), but, given that Mr. Kaufman was speaking in the first person, this statement is not inconsistent with his contention that he "has never represented that [his] home is a place of [Defendant's] business." (Kaufman Decl. ¶ 9.) Defendant also does not target the New York market with advertisements, has no telephone listing in New York, and has no website hosted in or targeting New York. (Def. Mem. at 5-6 (citing Moore Dep. at 80:4-81:1); Moore Decl. ¶ 13.)

Plaintiff also points to comments on an online forum by Defendant's Vice President of Sales, Karl Winkler, in which he referred to Mr. Kaufman as operating "out of our NY office."[2] (Pl. Opp'n at 20; Winkler Forum Post (Dkt. 42-12) at LEC000453.) Plaintiff also submits four

---

[2] Mr. Moore, Defendant's president, stated in a (highly contentious) deposition that Mr. Winkler had in fact made this comment. Moore Dep. at 132:22-134:2.

articles that refer to Defendant as having regional offices, including one in New York. (Pl.

Opp'n at 10-11; June 21, 2004, Albuquerque J. Article (Dkt. 42-13); June 23, 2005, Albuquerque

J. Article (Dkt. 42-14); ProSound Article (Dkt. 42-15); Rio Rancho Observer Article (Dkt. 42-

16.) These statements were not directly attributed to any representative of Defendant, and

Defendant contends that such references to a "New York office" were "not intended to indicate

that [Defendant] maintained an office or other company-owned or -operated physical location for

the use of its regional representatives." (Moore Decl. ¶ 15.) Regardless of their source or

intention, such statements are not on their own sufficient to demonstrate that Defendant held out

the physical space of Mr. Kaufman's home office as a place of its business.[3]

Finally, the court considers how the alleged place of business in the district compares to

other places of business of the defendant in other venues. See In re Cray, 871 F.3d at 1364.

Such a comparison could be helpful, the Federal Circuit suggested, because it might reveal that

Defendant "has a business model whereby many employees' homes are used by the business as a

place of business of the defendant." Id. Plaintiff argues that Defendant's business model is to

"utilize the homes of its managers to conduct company business." (Pl. Opp'n at 2-3.) As

support for this contention, Plaintiff notes that Defendant "forbids regional managers from

opening brick-and-mortar offices, advertises regional manager job positions as full-time 'home

office' positions, requires the location of a 'home office' to be 'in [an assigned] territory' and

offers 'home office allowance[s].'" (Id. at 3 (alterations in original).) However, despite

Plaintiff's conclusion that these allowances were "offer[ed]" to employees "presumably as

compensation for use of managers' homes" (id.), there is no indication that Defendant uses

employees' home offices to conduct its own business. In fact, the evidence before the court

---

[3] Because the court finds these statements insufficient to establish venue in light of the facts put forward by Defendant, it does not address Defendant's argument that such evidence is inadmissible and thus not properly considered.

indicates that Defendant's business model is to have, in addition to its staff at its headquarters in New Mexico and an office in Toronto, three regional sales employees "who travel from their homes to promote [Defendant's] products to dealers and their customers in their [respective] territories." (Moore Decl. ¶ 6.)  Mr. Kaufman explained that when he was hired, it was with the understanding that he "would work as [he] chose from home and travel to visit [Defendant's] dealers; and that [he] could live anywhere [he] chose." (Kaufman Decl. ¶ 4.)  Indeed, Mr. Kaufman states that he spends only about five hours each week working from his home office, while the majority of his time is spent traveling and meeting with dealers and their customers. (Id. ¶ 5.)  This is not enough to establish that Defendant's business model is to use its regional employees' homes as physical "place[s] of business."  Cf. RegenLab USA LLC, 335 F. Supp. 3d at 549 (observing that because all employees of the defendant worked from home, their home offices constituted a primary physical location for the defendant's business).

No one consideration or fact here is controlling.  Taken together, however, and keeping in mind the "restrictive" nature of § 1400(b), Stonite, 315 U.S. at 566, these facts do not support a finding that Mr. Kaufman's home was an established place of business of the Defendant in the Eastern District of New York.

2.    Jaycee

Plaintiff also contends that Jaycee, a company located in Jerry Cudmore's home in the Eastern District of New York, is a place of business of Defendant because Jaycee is "an agent of [Defendant]." (See Am. Compl. ¶¶ 42-72; Pl. Opp'n at 23-25.)  The Federal Circuit has made it clear, however, that the proper inquiry under § 1400(b) is not whether the company or employee located in a particular district is an agent of the defendant, but rather, whether the defendant has

"establish[ed] or ratif[ied] the place of business." In re Cray, 871 F.3d at 1363. "It is not enough that the [purported agent] does so on [its] own."[4]

　　The analysis to be applied to a business location is similar to that applied to an employees' home office. In In re ZTE (USA) Inc., 890 F.3d at1015-16, the Federal Circuit considered whether a district court had properly found venue in the Eastern District of Texas based on the location of the defendant's third-party customer service call center. The Federal Circuit found that the district court and magistrate judge had improperly failed to scrutinize the nature of the relationship between the call center and the defendant ("ZTE") so that it was not possible to determine from the record whether it consisted of something more than an "arms-length contract for services." Id. at 1015. For example, although the record reflected that the "call center 'has more than sixty dedicated ZTE [] customer service representatives,' neither the magistrate judge nor the district court made any findings on the nature of ZTE[]'s relationship with those representatives or whether it has any other form of control over any of them." Id. (citations omitted). Similarly, "[w]hile the magistrate judge found that ZTE [] 'has at least two full-time employees (supervisors) on site at the call center,'" it had failed to consider "the determining factor[, which] is whether those employees render the call center 'a place of the defendant, not solely a place of the defendant's employee[s]." Id. The Federal Circuit remanded with instructions to "give reasoned consideration to all relevant factors or attributes of the

---

[4] The court notes as well that the agreement between Defendant and Jaycee disclaims the creation of an agency relationship:

　　[Defendant] and [Jaycee] agree that their relationship is that of buyer and seller only. Nothing in this Agreement shall be construed as creating the relationship of employer and employee, principal and agent, franchisor and franchisee or joint venture between the parties hereto. [Jaycee] shall be deemed an independent contractor at all times with respect to its performance hereunder, and shall have no right or authority, whether express or implied, to assume or create, or purport to assume or create, any obligation in the name of or on behalf of [Defendant].

(Warranty Repair Agmt. (Dkt. 42-19) § 7 ("Relationship of the Parties").)

relationship," including: whether ZTE possesses, owns, leases, or rents the office space for the call center or owns any of the equipment located there; whether any signage on, about, or relating to the call center associates the space as belonging to ZTE; whether the location of the call center was specified by ZTE; and whether the call center would need ZTE's permission to move its call center outside of the district or to cease working for ZTE altogether. Id. at 1015.[5]

Here, Defendant has no ownership interest in Jaycee, an independent company owned and operated by Mr. Cudmore and his wife. (Moore Decl. ¶ 12; Cudmore Decl. ¶¶ 2, 7.) Defendant does not own, lease, or otherwise control any portion of Jerry Cudmore's home, where Jaycee is located. (See Cudmore Decl. ¶¶ 2, 7.)

Plaintiff contends nonetheless that "Jaycee is subject to a great deal of control [by Defendant], contractually in writing and by other conduct," and contends that Defendant places "substantial business constraints" on Jaycee "related to price, warranty, parts, manner of business, reporting, invoicing, etc.," which establish that Defendant "controls the manner by which Jaycee performs repair services." (Pl. Opp'n at 23-24; see also Am. Compl. ¶¶ 47, 54, 58-59, 61-65, 67-70.) However, the record fails to show that the relationship between Defendant and Jaycee is "more intimate and controlling than a traditional arms-length contractual

---

[5] After remand, the parties stipulated to a settlement and the case was dismissed. See Order of Dismissal, Am. GNC Corp. v. ZTE Corp., No. 4:17-cv-620 (E.D. Tex. Sept. 12, 2018), Dkt. 149. Soon thereafter, however, a different court in the Eastern District of Texas was confronted with the same question—whether ZTE could be sued based on the location of the call center. AGIS Software Dev., LLC v. ZTE Corp., No. 2:17-CV-517, 2018 WL 4854023, at *3 (E.D. Tex. Sept. 28, 2018). The plaintiff relied largely on the findings of the court in Am. GNC Corp. v. ZTE Corp., No. 4:17-CV-620, 2017 WL 5157700 (E.D. Tex. Nov. 7, 2017) (adopting report and recommendation), which were the subject of the Federal Circuit's mandamus action in In re ZTE (USA) to argue that venue was proper because: (1) ZTE had established the center to provide customer support services to its customers, (2) ZTE had provided materials to train customer service representatives, (3) ZTE's website advertised support and sales numbers for online purchase and sales that automatically routed customers to the call center, and (4) ZTE directed its customer service representatives at the call center to affirmatively contact customers in order to resolve issues and concerns. AGIS Software, 2018 WL 4854023, at *3. The district court disagreed, finding venue improper because the record did not show how ZTE controlled the work conducted at the call center or the call center itself, did not show how ZTE "ratified" the call center, and did not demonstrate how the relationship between ZTE and the company in charge of the call center was "more intimate and controlling than a traditional arms-length contractual relationship." Id.

relationship," AGIS Software, 2018 WL 4854023, at *3, or that Jaycee is actually a place of

business of Defendant, see In re ZTE (USA) Inc., 890 F.3d at 1015 ("The mere presence of a

contractual relationship between [the call center] and ZTE [] does not necessarily make [the] call

center 'a regular and established place of business' of ZTE []. . . .")

 Since 2008, Jaycee has contracted with Defendant to provide repair services to owners of

certain of Defendant's products.  (Moore Decl. ¶ 12; Cudmore Decl. ¶¶ 4-6; see also Warranty

Repair Agmt. (Dkt. 42-19).)  The agreement between Defendant and Jayce provides that either

party may terminate the agreement with or without cause at any time with adequate notice.

(Warranty Repair Agmt. § 9.)  Although the bulk of Jaycee's work in recent years has involved

repair of Defendant's products, Jaycee is not restricted to working on Defendant's products.

(Cudmore Decl. ¶ 5; Warranty Repair Agmt.; Moore Dep. at 245:8-247:11.)  Jaycee is only

authorized by Defendant to service a subset of the various products that Defendant manufactures.

(Moore Dep. at 249:5-23; Warranty Repair Agmt. § 2(b).)  Defendant's factory in New Mexico

also performs repairs on those products, as well as on newer product lines that Jaycee is not

authorized to service.  (Moore Dep. at 249:5-23, 257:13-17.)  There is only one category of older

products made by Defendant for which Jaycee is the exclusive service center as a result of the

fact that Defendant no longer supports these older products at its factory.  (Id. at 256:12-257:17;

Am. Compl. ¶ 72.)  Despite the products' age, Jaycee services these older products because Mr.

Cudmore "seems to be able to cobble them together."  (Id.)  Jaycee performs this and other non-

warranty work "for anybody that has the product."  (Cudmore Dep. at 24:3-6.)

 It is true that Jaycee's agreement with Defendant specifies timelines for repairing

Defendant's products and provides that Jaycee should forward products to Defendant's factory in

New Mexico if Jaycee is unable to complete the repairs within the specified time frame.

18

(Warranty Repair Agmt. § 3.)  Mr. Cudmore, however, stated that he tells customers that he will repair their products within three to five working days—a different time frame from that specified in the Warranty Repair Agreement and one he set himself.  (Cudmore Dep. at 59:9-60:10.)  The agreement also provides the terms according to which Jaycee is compensated for its work on Defendant's products.  For products still under warranty, Jaycee purchases parts from Defendant, and Defendant later reimburses Jaycee for the cost of those parts and pays Jaycee for its labor.  (Cudmore Decl. ¶ 6; Warranty Repair Agmt. §§ 4, 5.)  Labor rates charged by Jaycee to Defendant for warranty repairs are "established by agreement, and have been periodically re-negotiated and modestly increased" since 2008.  (Cudmore Decl. ¶ 6.)  For products no longer under warranty, Jaycee purchases parts from Defendant or other suppliers, as it chooses.  (Cudmore Dep. at 24:3-6; Moore Dep. at 253:6-25.)  Jaycee charges its customers for the cost of those parts and for its own labor at rates "suggested by [Defendant's] flat-rate price list."  (Cudmore Decl. ¶ 6.)  Jaycee, however, has "latitude" to increase the flat-rate prices suggested by the list, depending on the complexity of the job, and has frequently exercised that latitude.  (Id.; Cudmore Dep. at 64:10-67:23.)

With respect to the "manner" in which it conducts repairs, before Jaycee was designated an authorized service center for Defendant's products, Mr. Cudmore spent a week at Defendant's headquarters in New Mexico, being formally trained to service and repair Defendant's products.  (Cudmore Decl. ¶ 4.)  Since 2008, however, Mr. Cudmore has not returned to New Mexico, and no representative of Defendant has ever visited Jaycee's place of business.  (Id. ¶ 9.)  Mr. Cudmore confers regularly with Defendant's president "on matters ranging from particular Jaycee customer needs to other matters relating to Jaycee's repair business" and speaks "occasionally" with Defendant's engineering department "about technical matters."  (Cudmore

19

Decl. ¶ 9.) Jaycee also "tr[ies] to adhere to good standard practices and to provide high quality customer service at all times, which [] is important to [Defendant]." (Id.) However, Defendant does not "direct[] or control[] the conduct of Jaycee's business or how [it] provide[s] services for Jaycee's customers." (Id.) Mr. Cudmore is free to use his own procedures and techniques to repair Defendant's products, and is also free to "refuse repairs whether they are warranty or not." (Cudmore Dep. 45:19-48:7.) Jaycee also uses its own equipment to conduct repairs although Defendant initially provided Jaycee with a "starter kit" of small repair parts, such as "little tubes" of "resisters and capacitators sorted out," and manuals for its products. (Cudmore Decl. ¶ 7; Cudmore Dep. at 40:17-41:23.)

Plaintiff notes that Jaycee's business cards identify it as an authorized service center for Defendant and incorporate Defendant's logo, and that Jaycee uses the domain name www.lectrorepair.com in addition to its main website, www.jayceecomms.com. (Am. Compl. ¶¶ 49-51; Pl. Opp'n at 5; Cudmore Decl. ¶ 10.) This was all done with Defendant's consent, but not at Defendant's direction. (Cudmore Decl. ¶ 10; Cudmore Dep. at 30:5-33:24.) While Jaycee's use of Defendant's logo is relevant, it is not determinative. See Green Fitness Equip. Co., LLC v. Precor Inc., No. 18-CV-00820-JST, 2018 WL 3207967, at *4 (N.D. Cal. June 29, 2018) (observing that use of the defendant's logo by its independent retail distributors in the district was, alone, "inadequate" to establish the distributors' locations as the defendant's places of business). Moreover, there is no indication that Defendant has ever advertised Jaycee as a place of its business—Plaintiff alleges only that Jaycee is "the sole U.S. factory authorized service center of [Defendant] listed on its website other than [Defendant] itself." (Am. Compl. ¶ 44.) Cf. Blitzsafe Texas, LLC v. Bayerische Motoren Werke AG, No. 2:17-CV-00418, 2018 WL 4849345, at *8 (E.D. Tex. Sept. 6, 2018) (finding that BMW had "undoubtedly adopted and

ratified" its dealerships as its places of business where, among other things, the dealerships were "named 'BMW' . . . and referred to by [BMW] as 'BMW Centers;'" they "prominently display[ed] the singular logo of BMW with no reservations such as 'authorized dealer' or 'exclusive distributor;'" and BMW represented on its website that "the dealerships within this District are places of [BMW] with respect to the purchase of new BMWs" (emphases in original)).

Finally, Plaintiff has not shown that Defendant required Jaycee to be located in the Eastern District of New York, nor has Plaintiff demonstrated that Jaycee would need Defendant's permission to move its location out of the district. (See Cudmore Decl. ¶ 4; Warranty Repair Agmt.)

In sum, the facts here demonstrate that Defendant has contracted with Jaycee over a period of years to provide non-exclusive repair and maintenance services on certain of Defendant's products, which have been purchased by customers through third-party dealers, and which may or may not be under warranty. This does not, without more, render Jaycee's location a place of business of Defendant. See id.; see also Knapp-Monarch Co. v. Dominion Elec. Corp., 365 F.2d 175, 176-77 (7th Cir. 1966) (finding venue improper in district where defendant had "appointed [a company] as its authorized agent to make repairs on appliances under the terms of its warranty"); W. View Research, LLC v. BMW of N. Am., LLC, No. 16-CV-2590 JLS (AGS), 2018 WL 4367378, at *8 (S.D. Cal. Feb. 5, 2018) (finding that dealerships' physical locations were not the places of defendant BMW because BMW did not exert enough control over the dealerships "to support collapsing the corporate forms"); Stewart-Warner Corp. v. Hunter Eng'g Co., No. 69 C 579, 1969 WL 9613, at *3, *6 (N.D. Ill. July 3, 1969) (service center did not constitute a place of the defendant despite using defendant's name and despite

21

customer "good will" benefits derived by defendant from existence of service center because center "cannot be considered anything other than a separate and independent enterprise"). But cf. Blitzsafe Texas, 2018 WL 4849345, at *8-12 (finding that BMW's dealerships "constitute parts of a necessary distributorship which the law commands [BMW] adopt in order to conduct its business within the state of Texas," and that with respect to its warranty program, BMW and its dealerships "function as an integrated, two-part seller," with dealerships providing all new BMW warranties and all BMW warranty service to customers in the state).

\*      \*      \*

Because neither Mr. Kaufman's home office nor Jaycee is the Defendant's "regular and established place of business," venue is improper in the Eastern District of New York.

D.      **Transfer**

Because venue is not proper in the Eastern District of New York, the court must either dismiss, or "if it be in the interest of justice, transfer [the] case to any district or division in which it could have been brought." 28 U.S.C. § 1406(a). The decision to transfer under § 1406 "lies within the sound discretion of the district court." Minnette v. Time Warner, 997 F.2d 1023, 1026 (2d Cir. 1993); see also Katz v. Ladd Uniform Co., 975 F.2d 869 (Fed. Cir. 1992) ("The decision as to whether a transfer is in the interest of justice rests within the district court's discretion.") In determining this issue, the court takes into account the ultimate goal of the "expeditious and orderly adjudication of cases and controversies on their merits." Goldlawr, Inc. v. Heiman, 369 U.S. 463, 466-67 (1962).

Transfer will serve the interests of justice in this case. Venue is proper in the District of New Mexico. (See Def. Mem. at 18-19 (noting that Defendant "resides" in New Mexico for the purposes of § 1400(b)); Pl. Opp'n at 5 n.2 (requesting transfer to New Mexico if the court finds

venue improper).)  Dismissal would require Plaintiff to file a new action in New Mexico, while

transfer will allow this action to proceed in that forum and lead to adjudication on the merits.

See Hatfield v. Asphalt Int'l, Inc., No. 03-CV-1372 (DAB), 2004 WL 287680, at *4 (S.D.N.Y.

Feb.11, 2004) (holding that transfer was warranted where dismissal would "force [plaintiff] to

expend significant time and money filing a new action in a new forum").  Defendant would also

not be prejudiced, but would likely benefit by having the case transferred to the District of New

Mexico, its "home state" and presumably the location of many relevant documents and potential

witnesses.  See Stephan v. Babysport, LLC, 499 F. Supp. 2d 279, 290 (E.D.N.Y. 2007) (holding

that transfer to the Northern District of Texas would benefit defendants "in that they would

litigate this matter in their home state, presumably the location of all relevant documents and

witnesses).

　　　　Accordingly, the court holds that transfer is appropriate and orders this case transferred to

the District of New Mexico.

## IV.    CONCLUSION

　　　　For the foregoing reasons, Defendant's motion to dismiss or transfer for improper venue

is GRANTED.

　　　　The Clerk of the Court is respectfully directed to transfer the file in this matter to the

United States District Court for the District of New Mexico and to thereafter close the case.

　　　　SO ORDERED.

s/Nicholas G. Garaufis

Dated: Brooklyn, New York
　　　　February ⌊＿, 2019

NICHOLAS G. GARAUFIS  (
United States District Judge